IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN ERIC,                         :
           Plaintiff        : No. 1:09-CV-1052
                                 :
           v.               : (JUDGE CONNER)
                                 : (MAGISTRATE JUDGE PRINCE)
DONSCO INCORPORATED,               :
           Defendant        :

## <u>REPORT AND RECOMMENDATION</u>

## I. Procedural Background

Pursuant to an Order entered on August 4, 2010 (Doc. 34), the Honorable Christopher C. Conner referred the Defendant's pending Motion for Summary Judgment to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff, John Eric, commenced this action alleging violations of his civil rights by filing a complaint on June 3, 2009 against his former employer, Donsco, Inc. (Doc. 1). Specifically, the complaint alleges, *inter alia*, disparate treatment, harassment, discriminatory pay and breach of contract in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000-e *et seq.*, and similar violations of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* On April 30, 2010, Defendant filed a Motion for Summary Judgment along with a

Brief in Support (Docs. 13-14) and thereafter filed a Statement of Material Facts on May 10, 2010 (Doc. 16). Plaintiff filed an Answer to the Statement of Facts on June 3, 2010 and filed a Brief in Opposition to the Motion for Summary Judgment on June 4, 2010 (Docs. 22-23), to which the Defendant filed a Reply Brief on July 26, 2010. (Doc. 33). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendant's Motion for Summary Judgment be granted

## II. Factual Background

Plaintiff, a native of Sierra Leone, was employed by the Defendant as a grinder in its Mount Joy, Pennsylvania facility from February 20, 2006 through May 9, 2007. Unlike his Caucasian co-workers, Plaintiff, who is African-American, alleges that he was routinely assigned the most difficult tasks and that he was denied overtime pay and holiday pay. Plaintiff further claims that managers of Donsco instructed him to reduce the hours on his time-sheet so that he would not be eligible for such pay. He also maintains that he was subjected to racial harassment by fellow employees, about which he complained to supervisors who failed to respond effectively. Due to the harassment and disparate treatment, which he asserts was deliberately orchestrated by Defendant to force him out, Plaintiff avers he resigned his position.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving

3

party.  <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated</u>

<u>Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse</u>

<u>Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated

allegations of his or her pleadings.  When the party seeking summary judgment

satisfies its burden under Rule 56(c) of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the nonmoving party is required by

Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to

interrogatories or the like in order to demonstrate specific material facts which

give rise to a genuine issue.  <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 324

(1986).  The party opposing the motion "must do more than simply show that there

is some metaphysical doubt as to the material facts."  <u>Matsushita Electric</u>

<u>Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts

the burden of production to the nonmoving party, that party must produce

evidence to show the existence of every element essential to its case which it bears

the burden of proving at trial, for "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  <u>Celotex</u>, 477 U.S. at 323.  *See* <u>Harter v. G.A.F. Corp.</u>, 967 F.2d 846,

851 (3d Cir. 1992).

4

## IV. Discussion

### (A) Title VII and PHRA

Plaintiff, a native of Sierra Leone, asserts racial and national origin discrimination in violation of Title VII and the PHRA. Under Title VII, it is unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000(e)(2). The PHRA likewise prohibits discrimination by employers on the basis of race and/or nationality. *See* 43 P.S. § 955.[1]

In the absence of direct evidence of disparate treatment, cases such as Plaintiff's are examined under the evidentiary framework first set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under the <u>McDonnell Douglas</u> analysis, Plaintiffs must show, by a preponderance of the evidence, a prima facie case of discrimination. <u>McDonnell Douglas</u>, 411

---

[1] The court will analyze Plaintiffs' Title VII and PHRA claims under the same standards inasmuch as courts generally have interpreted the PHRA in accordance with the standards applied to claims brought under Title VII of the Civil Rights Act of 1964. <u>Grande v. State Farm Mut. Auto. Ins. Co.</u>, 83 F. Supp. 2d 559, 562 (E.D. Pa. 2000).

U.S. at 802.  If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee.  Id.  If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices. Id. at 804.  Summary judgment is appropriate on behalf of the employer if the employee fails to meet her burden at either the prima facie or pretext stage of the framework.

Under Title VII and the PHRA, a prima facie case of discrimination is demonstrated by the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job in question; (3) plaintiff suffered an adverse employment action; and (4) circumstances existed that support an inference of discrimination.  *See* Geraci v. Moody-Tottrop, Int'l, Inc., 82 F.3d 578, 580-81 (3d Cir. 1996) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)); *see* McDonnell Douglas Corp., 411 U.S. at 802.  The fourth prong of the prima facie case may be shown by sufficient evidence that non-members of the protected class were treated more favorably.  *See* Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

The first three elements appear uncontested.[2]  To meet the fourth prong of a prima facie case, a plaintiff must put forth facts to establish that the conditions surrounding his adverse employment action give rise to the inference of discrimination.  Adelman v. GMAC Mortg. Corp., No.: 97-691, 1997 WL 805274, *4  (E.D. Pa. December 30, 1997).  Plaintiff has alleged he was treated differently in two respects: first, that he was denied additional pay for which he was eligible and which other workers received and, secondly, that he was routinely assigned the most difficult work at the facility, unlike his white co-workers.  Thus, whether an inference of discrimination can be drawn from the facts must be determined.

*(A) Additional Pay*

As noted above, Plaintiff contends that he was denied overtime pay and holiday pay and, further, that he was instructed to alter his time sheets so they would not reflect his eligibility for the same.  Defendant argues, however, that

---

[2]  Indeed, Plaintiff is protected both as to race, being African American and national origin, as a native of Sierra Leone.  Moreover, for purposes of this decisions, the court will assume that Plaintiff was qualified for the position, having held it for over one (1) year.  Finally, the conduct of which Plaintiff complains, if established, "alters the employee's 'compensation, terms, conditions, or privileges of employment,' deprives him or her of 'employment opportunities,' or 'adversely affects his or her status as an employee'" is proscribed by Title VII.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997), *overruled in part on other grounds by* Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006) *and by* Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753-54 (1998).

Plaintiff not only was eligible for such additional pay but also that he, in fact, received these wages. (Doc. 16, ¶ 26). Specifically, Defendant maintains that Plaintiff worked and was properly compensated for 724 hours of overtime between February 20, 2006 and December 31, 2006, and was paid for 79.5 hours of overtime between January 1, 2007 and May 9, 2007. (Id.) To support its contention, Defendant has submitted an affidavit of Rae Ann McAllister, the payroll manages for Donsco, Inc., along with the PR140, a complete pay history of an employee, for all the grinders at the Mount Joy facility during the period of Plaintiff's employment. (Doc. 14, Ex. F).

Plaintiff disputes this position by alleging that "Plaintiff was denied full payment for overtime worked in that supervisors would require that he change his time sheet to reflect less time worked[]" and that he "was denied double-time pay for actually working on a holiday by being told to switch his time sheet." (Doc. 19, ¶ 26). Plaintiff does not offer specific dates and hours worked to support his claim that he was not paid or underpaid, nor does he offer specific evidence as to which dates he was requested to alter information on his time sheets regarding the hours worked. Additionally, along with the overtime pay cited by the Defendant, Plaintiff's pay records further reflect that he received 112 hours of holiday pay in 2007 and 40 hours of holiday pay in 2007. More importantly, however, these

records reflect that the other grinders received overtime and holiday pay at rates not inconsistent with those Plaintiff received.[3] The pay roll records for the period covering his employment belie Plaintiff's argument that, unlike Caucasian employees, he was not properly compensated for holidays and overtime worked. Consequently, he cannot establish the fourth prong of a prima facie case on this claim inasmuch as the evidence does not suggest discriminatory motive on the part of the Defendant in awarding, or compensating, overtime and holiday work. He has, therefore, failed to establish his claim of discriminatory pay.

*(B) Work Assignments*

Plaintiff also argues that he was discriminated against by routinely being assigned the hardest task, grinding the "chocolate bar,"[4] work that Caucasian

---

[3] For example, during the periods covering Plaintiff's employment at Donsco, February 20, 2006 through December 31, 2006 and January 1, 2007 through May 9, 2007, other grinders were paid for holiday (h) and overtime (o) hours as follows:

| | |
|---|---|
| George Wilson | 2006: 128 (h), 787 (o); 2007: 32(h), 58 (o) |
| Rafael Cruz | 2006: 144 (h), 560 (o); 2007: 16 (h), 65.5 (o) |
| John Hertzog | 2006: 128 (h), 806 (o); 2007: 32 (h), 151 (o) |
| Brian Douglas | 2006: 160 (h), 765.84 (o); 2007: 16 9h), 130 (o) |
| Christopher Rickabaugh | 2006: 160 (h), 601 (o); 2007: 24 (h), 88 (o) |
| Christian Smith | 2006: 144 (h), 699 (o); 2007: 16 (h), 112(o) |

[4] "Chocolate bar" is a nickname given by Donsco employees to Alstom Ni-hard casting # 126203. It is acknowledged to be the most difficult casting to grind

employees were never assigned to do. Defendant has submitted records identifying employees assigned to the "chocolate bar" during Plaintiff's tenure, and further identifies them as "white" or "black." (*See* Doc. 14, Ex. 15). The records state the date(s) an employee was assigned to the "chocolate bar." The following employees, listed as "black" employees, were assigned to the chocolate bar with the following frequency: Ud Stonefield (1 time); George Wilson (2 times); Plaintiff John Eric (5 times). With respect to Caucasian employees, assignment to the chocolate bar occurred as follows: Mary McCall, John Lancaster, Guy Anne, Eric Fry (each 1 time); Robert Fontes, Brian Douglas and Jesse Gill (each 2 times); Christian Smith and Robert Ortman (each 3 times); Christopher Rickabaugh (4 times); Lisa Smith, John Hertzog and William McSherry (each 5 times). Accordingly, these records suggest that assignments were made to work the "chocolate bar" to Caucasian and non-Caucasian employees alike.[5]

Plaintiff additionally states the following individuals were grinders on the first shift: John Eric (Plaintiff), George Wilson, Rafael Cruz (all considered

due to the iron.

[5] Duplicative dates contained in this record have been eliminated in compiling the occurrences of chocolate bar work.

"black" employees), and two individuals, Robert and Brian, whose last names are unknown to Plaintiff. Defendant has identified several Caucasian employees, including Brian Douglas, as having been assigned to the "chocolate bar." Except for Brian Douglas, Plaintiff disputes that the listed individuals were not on the first shift. Presumably, then, Brian Douglas is the grinder to whom Plaintiff refers as "Brian," without a last name, as working the first shift with him. The pay roll records during Plaintiff's tenure reveal no individual with the first name of "Robert" in the position of grinder.

From these records, therefore, it would appear that Brian Douglas is a Caucasian employee similarly situated to Plaintiff in that he is a first-shift grinder. As noted above, Plaintiff was assigned to the "chocolate bar" on five (5) occasions, and Brian Douglas worked on the "chocolate bar" on two (2) dates. The difference between being assigned to work the "chocolate bar" twice, as Brian Douglas was, and five (5) time, as Plaintiff was, is not significant and does not rise to the level that could reasonably infer discrimination informed the job assignments. Additionally, Plaintiff testified in his deposition about working the chocolate bar: "Nobody there does that job except me" and "Nobody I know does chocolate bar. I do it. . . . All the other grinders come to work . They give them another type of job, easy job." (Doc. 22, Ex. 2, p. 38). Plaintiff's position that he

was always assigned to the chocolate bar and that other employees were never

given that work to perform is undermined by the work records submitted by

Defendant evidencing other workers performed work on the chocolate bar. The

Plaintiff has thus failed to put forth sufficient evidence that other workers were

treated more favorably that would suggest or indicate that the circumstances

surrounding his work assignments suggest a discriminatory motive or intent on the

part of the Defendant. An inference of discriminations cannot, therefore, be drawn

under theses facts.

*(B) Hostile Work Environment*

The Court of Appeals for the Third Circuit has established five elements a

plaintiff must establish to succeed on a hostile work environment claim:

> (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class;
>
> (2) the discrimination was pervasive [or severe];[6]
>
> (3) the discrimination detrimentally affected the plaintiff;

---

[6] The Third Circuit had required that discriminatory harassment be "pervasive and regular." *See, e.g.*, Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir.1995). In Pennsylvania State Police v. Suders, the Supreme Court of the United States made it clear that the harassment must be "sufficiently severe or persuasive to alter the conditions of [the complainant's] employment." 542 U.S. 129, 133-34 (2004); *see also* Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006).

(4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and,

(5) the existence of respondeat superior liability.

Shahin v. College Misericordia, No. 3:CV-02-0925, 2006 WL 2642355, at *11 (M.D. Pa. Sept.13, 2006) (citing West, 45 F.3d at 753).  A court should consider all the circumstances in determining whether an environment is hostile or abusive, including "the frequency of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Courts must bear in mind that "Title VII is not 'a general civility code for the American workplace.'" Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006), *implied overruling on other grounds recognized by* Moore v. City of Philadelphia, 461 F.3d 331, 2006 WL 2492256, at *8-9 (3d Cir. 2006) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80-81 (1998)).  Title VII is not violated by "[m]ere utterance of an ... epithet which engenders offensive feelings in an employee" or by mere "discourtesy or rudeness," unless so severe or pervasive as to constitute an objective change in the conditions of employment. *See* Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citations omitted).

Thus, "'simple teasing,'offhand comments, and isolated incidents (unless extremely serious)" are not actionable under Title VII. Id. at 788. In examining a hostile work environment claim, a court should focus not on individual incidents, but rather, on the overall situation to determine whether a plaintiff suffered intentional discrimination. *See* Jensen*, supra*; Cardenas v. Massey, 269 F.3d 251, 261-62 (3d Cir. 2001).

Plaintiff alleges he was subjected to a hostile work environment by the following acts: having his lunch stolen, having his radio broken; having glue placed on his lock; and being called names, *to wit*., "bitch" and "black monkey." Even assuming such acts targeted Plaintiff because of his race and/or national origin, the first three incidents do not rise to the level of pervasiveness or severity to establish a hostile work environment. Additionally, Plaintiff has put forth no evidence to establish that such conduct was motivated by animus based on his race or nationality. Without more, the court finds that a reasonable factfinder could not view the these three incidents as showing that Plaintiff's treatment was attributable to his race or nationality. *See* Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 277 (3d Cir.2001). Therefore, the first element of a hostile work environment has not ben met as to the first three acts of which he bases his claim.

In analyzing the second element of a hostile work environment claim, the test looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it interferes with an employee's work performance. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, (1993); *see* <u>McGraw v. Wyeth-Ayerst Laboratories, Inc.</u>, 1997 WL 799437 (E.D. Pa. Dec. 30, 1997); <u>Faragher</u>, *supra* at 788 ("Conduct must be extreme to amount to a change in the terms and conditions of employment."). "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." <u>Abramson</u> at 262 (quotations and citations omitted).

Having one's lunch stolen, one's radio broken and/or having one's lock tampered with are acts that do not rise to the level of severity or pervasiveness to meet the second element of a hostile work environment. They are isolated events, which are neither physically threatening nor humiliating and would not reasonably interfere with work performance. Consequently, with respect to these incidents, which amount more to horseplay than anything else, Plaintiff has likewise failed to

establish the second factor of a hostile work environment.[7]

The alleged name-calling by his co-worker, Lisa Smith, carries more racial animus. Plaintiff asserts that Smith often called him and other employees "bitch" and said they were "bitching." (Doc. 22, Ex. 2, p. 18). He also maintains that she called him "black monkey" on one occasion. (Id. at p. 19). Plaintiff contends that he felt threatened by this latter comment. (Id.) Smith acknowledged that she called other workers "bitch" but denied ever using this word with respect to Plaintiff. (Doc. 22, Ex. 13, p.17-19). She also denied ever calling Plaintiff "black monkey." (Id.).

Even assuming, for summary judgment purposes, that the name-calling occurred as Plaintiff alleges, this evidence is not sufficient to establish that Plaintiff was subjected to regular and pervasive harassment based upon race.[8] *See* Jeffries v. Potter, 2009 WL 423998, *8 (D. Del. Feb. 19, 2009) (being called a

---

[7] Thus, even assuming Plaintiff could meet factors 3-5 by establishing that these acts detrimentally affected him, that such acts would also detrimentally affect a reasonable person of the same protected class in Plaintiff's position and that respondeat superior liability exists on the part of the Defendants for these actions, a prima facie case of a hostile work environment cannot be established.

[8] It is questionable whether the terms "bitch" and bitching" with reference to Plaintiff, an African-American and native of Sierra Leone, are sufficiently charged with a discriminatory tone to create a hostile work environment inasmuch as such terms generally denote gender, not race or national origin, discrimination.

"bitch" and a "white honkey bitch" constitutes sporadic use of abusive language and does not rise to the level of a hostile work environment)*;* Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 795 (8th Cir. 2004) (affirming grant of summary judgment on hostile environment claim when plaintiff was only exposed to six racially derogatory comments over eighteen months); *see also* Harris v. SmithKline Beecham, 27 F. Supp. 2d 569, 578 (E.D. PA.1998) ( "A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment." (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (1990)). While derogatory racial remarks are improper,

> racial comments that are sporadic or part of casual conversation do not violate Title VII. For racist comments, slurs and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racist slurs, there must be a steady barrage of opprobrious racial comments.

Al-Salem v. Bucks County Water & Sewer Authority, No. 97-6843, 1999 WL 167729, *5 (E.D. Pa. March 25, 1999) (internal citations omitted). *See also* Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (noting that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" is insufficient to violate Title VII); Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir.1994) (requiring "more than a few isolated incidents of racial

enmity" or "sporadic racial slurs" to establish a Title VII violation).  Therefore,

the arguably more offensive statement, being called a "black monkey" on one

occasion, is likewise insufficient to establish a prima facie case of a hostile work

environment.  *See* McClean v. Communications Construction Group, LLC, 535 F.

Supp.2d 485, 490 (D. Del. 2008) (holding that "a single racially derogatory

comment is insufficient to withstand defendant's summary judgment challenge.");

Capilli v. Nicomatic L.P., Civ. A. No. 07-3897, 2008 WL 4140398, *9 (E.D. Pa.

Sep 08, 2008) (one-time note, while offensive, is not so severe as to result in a

workplace permeated with discriminatory intimidation, ridicule or insult, as is

required to show a hostile work environment); Jones v. Norton, Civ. A. No.

06-2924, 2008 WL 282251, *3 (E.D. Pa. Jan.31, 2008) (a "single, racially charged,

highly inappropriate outburst by a fellow employee" was insufficient to establish a

hostile work environment.); *see also* Lawrence v. F.C. Kerbeck & Sons, 134 Fed.

Appx. 570, 572 (3d Cir .2005) ("Although [the supervisor]'s alleged [racial]

comment was disrespectful and inexcusable, we agree with the District Court that

[plaintiff] cannot show a hostile work environment based on this one isolated

incident").

Accordingly, Plaintiff has failed to meet his burden of establishing a prima

facie case of a hostile work environment.  The allegations he has made fail to

reach a level of severity or pervasiveness to have altered the workplace.  Summary

judgment in favor of Defendant is, therefore, appropriate on this count.

*(C) Breach of Contract*

Plaintiff also brings a claim for breach of contract pursuant to 28 U.S.C. §

1981.  The statutory provision provides:

> All persons within the jurisdiction of the United States shall have the
> same right in every State and Territory to make and enforce contracts,
> to sue, be parties, give evidence, and to the full and equal benefit of
> all laws and proceedings for the security of persons and property as is
> enjoyed by white citizens, and shall be subject to like punishment,
> pains, penalties, taxes, licenses, and exactions of every kind, and to
> no other.

29 U.S.C. § 1981(a).

Defendant asserts that Plaintiff cannot state a claim for breach of contract

pursuant to §1981, contending that this employer-employee relationship is not

actionable under this provision.  Plaintiff cites case law to suggest that §1981

protects individuals from discrimination in contracting.  However, the case on

which Plaintiff relies to challenge this argument, <u>Abdulhay v. Bethlehem Medical

Arts, L.P.</u>, 425 F. Supp.2d 646 (E.D. Pa. 2006), is distinguishable from the instant

case.

The <u>Abdulhy</u> case concerned a dispute over an agreement between the

parties to design and construct medical offices in space leased by plaintiffs in a

19

medical office building owned and managed by defendants.  The court found that

material issue(s) of fact existed as to "whether defendants intended to discriminate

on the basis of race [and] whether defendants acted in a discriminatory manner

concerning plaintiffs' rights to make and enforce contracts, both relating to

plaintiffs' claims of discrimination in violation of 42 U.S.C. § 1981."  However,

the breach of contract therein referred to a sub-lease concerning one plaintiff's

right, as a party to the contract, to create contracts with third parties regarding the

leased premises.  *See* Abdulhay v. Bethlehem Medical Arts, L.P., No. Civ. A. 03-

CV-4347, 2004 WL 620127 (E.D. Pa. March 29, 2004).  Thus, it is quite a

different factual scenario from the present matter and  has little relevance to a

claim for a breach of an alleged employment contract between the employee and

employer based on discriminatory intent, as is raised herein.

    The court finds that the Abdulhay case is in line with other holdings which

have applied § 1981 to discriminatory practices that interfere with one's ability to

enter into contracts, and it further concludes that Abdulhay does not address, nor

can it be extended to include, § 1981 liability concerning a breach of contract in

the employer-employee context.  *See* Hayes v. Community General Osteopathic

Hosp., 730 F. Supp. 1333, 1336 (M.D. Pa. 1990) (holding that discriminatory

discharge is not redressable under section 1981 as part of contract enforcement

because "[d]ischarge may be a breach of contract but it does not interfere with or obstruct an employee's access to, or use of, judicial or nonjudicial methods of adjudicating disputes."); Alexander v. New York Medical College, 721 F. Supp. 587 (S.D.N.Y.1989) (demotion and then discharge not actionable under section 1981). *See also* Bascomb v. Smith Barney Inc., No. 96 Civ. 8747, 1999 WL 20853, at *4 (S.D.N.Y. Jan. 15, 1999) (dismissing § 1981 claim because plaintiff had not alleged an employment contract and thus was an at-will employee); Simpson v. Vacco, No. 96 Civ. 3916, 1998 WL 118155, at *7 (S .D.N.Y. Mar. 17, 1998) (where an employment contract was not entered into, plaintiff was an at-will employee and was precluded from asserting a claim under § 1981), *modified on other grounds*, 1998 WL 264850 (S.D.N.Y. May 26, 1998).

Moreover, the Commonwealth of Pennsylvania recognizes the at-will employment doctrine. McGovern v. Jack D's, Inc., No. 03-5547, 2004 WL 228667, at *5 (E.D. Pa. Feb. 3, 2004); McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 750 A.2d 283, 286 (2000). Thus, employment agreements in Pennsylvania are "presumptively terminable at will by either party . . . an employee may leave a job for any or no reason and an employer may discharge an employee for any or no cause." Reilly v. Stroehmann Bros., 532 A.2d 1212, 1213 (Pa. Super. 1987). Plaintiff has not established a contract, either express or

implied, with Donsco. "[A] handbook, to be construed as a contract, must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment." <u>Reilly</u> at1214. Merely furnishing an employee handbook does not demonstrate that the "parties reached an agreement or had the intention to contract with respect to those benefits." <u>Henderson v. NutriSystem</u>, 634 F. Supp. 2d 521, 536 (E.D. Pa. 2009) (quoting <u>Ingrassia Const. Co. v. Walsh</u>, 486 A.2d 478, 483 (Pa. Super. 1984)) (internal citations omitted). In this case, the handbook expressly states that the handbook does not constitute a contract of employment. (*See* Doc. 14, Ex. E, p. 11).

For these reasons, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

### *(D) Exhaustion*

In its Reply Brief, Defendants contends, for the first time, that Plaintiff's claims regarding disparate treatment and discriminatory pay practices have been waived inasmuch as he has failed to administratively exhaust these issues by raising them before the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission. Having failed to raise this ground for dismissal in its Brief in Support of the Motion for Summary Judgment, however, Defendant cannot subsequently claim Plaintiff's failure to exhaust his

administrative remedies as a basis to enter judgment in its favor. *See* <u>Voci v.</u> <u>Gonzales</u>, 409 F.3d 607, 609 n. 1 (3d Cir. 2005) ("An issue is waived unless a party raises it in its opening brief[.]"); <u>Laborers' Int'l Union v. Foster Wheeler</u> <u>Corp.</u>, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."); <u>Dreyer v. Sheaffer</u>, Civ. A. No. 3:08-1132, 2009 WL 917829, *3 (M.D. Pa. Apr.2, 2009) (Caputo, J.) ("[A] district court need not address issues raised for the first time in a reply brief. A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.") (internal citations and quotations marks omitted); <u>American Home Mortg. Corp. v. First Am. Title Ins.</u> <u>Co.</u>, No. 07-1257, 2007 WL 3349320, *3 n. 8 (D.N.J. Nov. 8, 2007) ("Because Defendant raises this issue for the first time in its reply, the Court will not consider this argument.").

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendant's Motion for Summary Judgment (Doc. 13) be granted.


Date: October 12 , 2010                    s/ William T. Prince
                                           William T. Prince
                                           United States Magistrate Judge